December 26, 1991

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

HERMAN S. SABLAN and ANTONIO T. SALAS,

 Plaintiffs/Appellants,

vs.

ELOY INOS, DIRECTOR OF FINANCE; CNMI DEPARTMENT OF FINANCE; DIVISION OF REVENUE AND TAX; COMMONWEALTH GOVERNMENT, LORENZO I. GUERRERO, GOVERNOR OF THE CNMI,

 Defendants/Appellees.

APPEAL NO. 91-018
CIVIL ACTION NO. 91-734

ORDER

Argued and Submitted December 23, 1991

Counsel for Plaintiffs/Appellants: Robert J. O'Connor
P.O. Box 1969
Saipan, MP 96950

Counsel for Defendants/Appellees: Eric Smith
Assistant Attorney General
Attorney General's Office
2d Administration Building
Capitol Hill
Saipan, MP 96950

BEFORE: VILLAGOMEZ and BORJA, Justices, and HILLBLOM, Special Judge.

VILLAGOMEZ, Justice:

I.

On August 19, 1991, we issued a temporary injunction and ordered the Superior Court to take custody and constructive possession of all income tax documents and information without taking actual possession thereof. The temporary injunction is

still in effect. In December, 1991, the Inspector General of the Department of the Interior subpoenaed the Governor of the Commonwealth of the Northern Mariana Islands ("CNMI") to produce all documents related to tax returns and information filed with the Department of Finance.

As a result of the subpoena, the parties requested that we expedite oral argument on this appeal or to decide the matter without oral argument. We decided to hear oral argument on December 23, 1991. At oral argument both parties pressed for an expedited decision on this matter.

In view of the exigency, we have decided to issue an order at this time, to be followed by an opinion setting forth our analysis and reasoning. Our expedited decision herein is based on the briefs, arguments of counsel, and review of relevant legal documents.

## II.

This is an appeal (from the dismissal of an action) by two Commonwealth taxpayers who sought to enjoin the Director of Finance from disclosing their confidential[1] tax documents and related

---

[1] 4 CMC § 1701. Application of the Internal Revenue Code, in General.

. . .

(d) Confidentiality, Disclosure, and Coordination.

 (1) Returns and return information shall be confidential, and except as authorized by NMTIT Section 6103, no officer or employee of the Commonwealth shall disclose any return or

information to the Inspector General after the Inspector General informed (by letters) the CNMI Governor of its intent to audit the CNMI's accounts and to review all documents related to individual tax returns.[2]

The trial court determined that the Inspector General is an indispensable party[3] in this case. When the plaintiffs did not include the Inspector General as a party, it dismissed the action pursuant to Rule 19, Com.R.Civ.P.

Plaintiffs contend that the trial court erred as a matter of law, arguing (1) that the Inspector General is not an indispensable party and the trial court misinterpreted Rule 19, (2) the trial court should have issued an injunction and taken custody and constructive possession of the tax returns, and (3) an application of 48 U.S.C. § 1681(b) that would require the CNMI to disclose confidential tax returns to the Inspector General would violate the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America

---

 return information obtained by him in any manner in connection with his service as such an officer or employee or otherwise. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

[2] The Inspector General did not inform the individual taxpayers of his intent to review their tax returns. Nor did he serve them with the subpoena.

[3] The Inspector General did not attempt to intervene in the trial court or appear as an amicus in this appeal. It has been aware of the complaint filed on July 9, 1991, and the appeal filed on August 20, 1991.

("Covenant"). Comm. Code B-101.

Defendants oppose any issuance of an injunction on the basis that the CNMI Government does not intent to disclose, or release to the Inspector General, the tax return information.

## III.

The issues raised on appeal are:

1. Whether the Superior Court erred in concluding that the Inspector General is an indispensable party.

2. Whether the Superior Court should have prohibited the CNMI from disclosing tax returns and return information to the Inspector General.

3. Whether the Superior Court should have taken custody and constructive possession of the tax return information.[4]

## IV.

■It is our opinion that the Inspector General is not an indispensable party in this case. 48 U.S.C. § 1681(b) authorizes the Inspector General to audit the "accounts" of the CNMI. The information contained in the tax returns of the plaintiffs are properties of the taxpayers and are not "accounts" of the CNMI. The tax returns filed with the Commonwealth Government are confidential documents pursuant to 4 CMC § 1701(d)(1).

■The taxpayers have the right to privacy under § 10, Article I,

---

[4] Because of our ruling on the other issues, this issue need not be addressed.

CNMI Constitution. Since the information contained in the tax returns are the properties of the taxpayers, only the taxpayers have the right to authorize the release of such information. Any release of the information, without such authorization, to any person not authorized by local law, or any U.S. law made applicable in the CNMI through the Covenant, would violate the taxpayer's right to privacy, the confidentiality of the information, and the right to self-government.[5]

## V.

The Superior Court should have prohibited the CNMI from disclosing tax returns and return information to the Inspector General.

Whether the CNMI may disclose to the Inspector General the confidential tax returns and return information depends upon whether 48 U.S.C. § 1681(b) applies in the CNMI.

The applicability of 48 U.S.C. § 1681(b) to tax returns in the CNMI depends upon whether it is authorized by the Covenant and does not violate the fundamental provisions of the Covenant. If the Covenant does not authorize its applicability or if it contradicts any fundamental provision of the Covenant (such as §§ 101 and 103), then it is void as to its applicability in the CNMI. See Analysis of the Covenant, 19 (1975).

■The Covenant is an agreement entered into between the United

---

[5] Applicability of U.S. laws in the CNMI and the right to self-government are further discussed below.

States Government and the Government/people of the Northern Mariana Islands. They entered into the agreement as two separate, but equal sovereign entities.[6] The Covenant governs the relationship between the two parties.[7]

The expressed purpose of the Covenant is "to establish a self-governing commonwealth for the Northern Mariana Islands . . . and to define the future relationship between the Northern Mariana Islands and the United States." Preamble to the Covenant.

The Covenant is an agreement approved by the United States through a joint resolution which states:

> Resolved by the Senate and House of Representatives of the United State of America in Congress Assembled, that the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, the text of which is as follows, is hereby approved.

House Joint Resolution 549 (1975).

█ The Covenant, as an agreement, may be amended or terminated only by agreement of the parties thereto, or as provided for in the

---

[6] ". . . . the Charter of the United Nations and the Trusteeship Agreement between the Security Council of the United Nations and the United States of America guarantee to the people of the Northern Mariana Islands the right freely to express their wishes for self-government or independence." Preamble to the Covenant. The Preamble further states "This Covenant will be mutually binding when it is approved by the United States, by the Mariana Islands District Legislature and by the people of the Northern Mariana Islands in a plebiscite, constituting on their part a _sovereign_ act of self-determination." (Emphasis added) _See also_, _Wabol v. Villacrusis_, No. 89-05, 1 N.Mar.I. 19 (1989).

[7] "The relations between the Northern Mariana Islands and the United States will be governed by this Covenant which, together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands." Covenant, Art. I, § 102.

Covenant, but not by the unilateral action of any one party. Covenant, § 105.

Article I, Section 103 of the Covenant provides that the people of the Northern Mariana Islands will have the right of local self-government. This provision retains in the people of the CNMI the sovereign right to self-government which they had prior to and at the time they entered into the Covenant. This section cannot be unilaterally amended by either party to the Covenant.[8]

We interpret the term "self-government" as used in the Covenant, at a minimum, to mean that the people of the Northern Mariana Islands will <u>enact</u> the laws of the CNMI; that they will <u>interpret</u> the laws of the CNMI; and that they will <u>execute</u> the laws of the CNMI.

The CNMI's right to self-government is with respect to internal affairs[9] (Covenant, § 103), as opposed to foreign affairs and defense (Covenant, § 104).

At the same time, the CNMI has agreed to relinquish its right of self-government and to apply U.S. laws in certain matters.

Article V of the Covenant sets forth certain provisions of the

---

[8] Article I, Section 105 of the Covenant provides:

> . . . Articles I, II and III and Sections 501 and 850, may be modified only with the consent of the Government of the United States and the Government of the Northern Mariana Islands.

[9] The tax laws of the CNMI, the manner in which the CNMI collects taxes, the tax returns filed with the government, and all related information are matters of internal affairs, not related to foreign affairs or defense. In the exercise of self-government, the CNMI may enact, interpret, and execute laws related to local taxation.

U.S. Constitution and laws which would apply or would be incorporated by reference in the CNMI in contradiction to the principle of self-government. Section 105 of the Covenant specifically authorizes the United States to enact laws applicable in the CNMI, provided that such laws do not contradict Articles I, II, or III of the Covenant.

It is our opinion that 48 U.S.C. § 1681(b) is not made applicable in the CNMI by the Covenant because it contradicts Section 103 thereof. Therefore, it is void and has no force and effect in the CNMI.[10]

The dismissal of this action by the Superior Court will be **REVERSED**. This case, upon issuance of our opinion, will be **REMANDED** for the trial court to determine if it should issue a permanent injunction and whether it should relinquish custody and constructive possession of the tax returns and return information. The temporary injunction we ordered shall continue in effect until disposition of this case.

Dated this _26th_ day of _December_, 1991.

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice

_____
LARRY L. HILLBLOM, Special Judge

---

[10] "Thus any attempt by the United States or the Northern Marianas to circumvent the fundamental aspects of the Covenant would be void and of no effect." Analysis of the Covenant 19 (1975).